386 A.2d 560

**COMMONWEALTH of Pennsylvania**

v.

**Richard W. RINIER, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 14, 1977.

Decided April 28, 1978.

---

168

Edward F. Browne, Jr., Assistant Public Defender, Lancaster, for appellant.

D. Richard Eckman, District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the record does not demonstrate that he voluntarily and knowingly withdrew his post-verdict motions. As a remedy, appellant requests that we permit him to file post-verdict motions *nunc pro tunc*. Instead, we remand for an evidentiary hearing to determine whether appellant voluntarily and knowingly withdrew his post-verdict motions.

On July 21, 1976, a Lancaster County Court of Common Pleas jury adjudged appellant guilty of rape [1] and theft by unlawful taking.[2] After the jury returned its guilty verdicts, the lower court advised appellant that "you have the right to file a verbal motion for a new trial, which must be put in writing within seven days. Having been so advised, you will govern yourself accordingly." Appellant's trial counsel, Assistant Public Defender Howard Mummau, responded by asking leave of the court to file written motions within seven days; the court granted this request.

On July 28, 1976, appellant's counsel filed timely motions requesting either an arrest of judgment or a new trial.[3] These motions alleged that the Commonwealth failed to produce sufficient evidence to sustain the guilty verdicts and that the verdicts were contrary to the evidence, the weight of the evidence, and the law. The motions also provided that appellant reserved the right to file supplemental reasons for a new trial upon transcription of the notes of testimony. Appellant's counsel attached an affidavit in which he affirmed that "the within Motions are not made for the purpose of delay, but because it is believed that an injustice has been suffered. Further, Richard W. Rinier, defendant, requested that said Motions be made."

On November 3, 1976, another Assistant Public Defender, Edward F. Browne, Jr.,[4] acting on appellant's behalf, filed supplemental motions for a new trial. These motions alleged that the lower court erred in (1) granting the Commonwealth's Rule 1100(c) petition, (2) permitting appellant's wife to testify, and (3) denying appellant's trial motion for appointment of new counsel. A final motion asserted that

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3121.

2. The Crimes Code, supra; 18 Pa.C.S. § 3921.

3. Pa.R.Crim.P. 1123(a); 19 P.S. Appendix; requires that written post-verdict motions be filed within seven days after the finding of guilt.

4. The record does not reveal if or when Browne officially entered an appearance and replaced Mammau as appellant's attorney.

after-discovered evidence necessitated a new trial. On November 5, 1976, Attorney Browne filed an application for an evidentiary hearing on appellant's contention that after-discovered exculpatory evidence made a new trial imperative; the Commonwealth consented to this request. On December 7, 1976, the lower court granted this application and scheduled a hearing for January 4, 1977. At the conclusion of this hearing, the court reserved its decision on appellant's contention.

On January 24, 1977, appellant filed a handwritten petition which requested the appointment of new counsel. Appellant asserted that continued representation by Attorney Browne would constitute a conflict of interest because appellant wished to raise the ineffective assistance of his trial counsel, a member of the same Public Defender office as Browne. Appellant's petition enumerated several alleged instances of ineffective representation; one allegation accused trial counsel of failure to communicate with appellant after trial and refusal to file certain post-verdict motions on appellant's behalf. On January 28, 1977, Browne filed a petition which cited a possible conflict of interest and therefore requested that the court permit him to withdraw from further representation of appellant. On the same day, the lower court appointed Penn B. Glazier, a private attorney, to represent appellant.

On February 25, 1977, appellant's new attorney filed an application for an evidentiary hearing on appellant's contention that his trial counsel rendered ineffective assistance. The Commonwealth's answer acquiesced in appellant's request because ". . . the issue of whether Defendant was afforded effective assistance of counsel at trial is inextricably tied to the validity of the other issues which Defendant has raised in post-trial motions." Therefore, the Commonwealth desired that the hearing should be held prior to the disposition of appellant's post-verdict motions. On March 4, 1977, the lower court granted appellant's application and scheduled a hearing for April 14, 1977.

On April 13, 1977, appellant filed a petition for leave to withdraw his outstanding post-verdict motions. The petition provided: "The Defendant, Richard W. Rinier, Jr., having been fully advised of his rights by counsel, Penn B. Glazier, Esquire, does hereby petition your Honorable Court for leave to withdraw the Post Verdict Motions heretofore filed by him." Both appellant and his attorney, Penn Glazier, signed the petition. On the same day, the lower court granted the petition without conducting a hearing or examining appellant on his decision.

On June 3, 1977, the lower court sentenced appellant to a term of imprisonment of not less than time served nor more than 3½ years on the theft conviction and to a concurrent term of 3 years probation on the rape conviction. This appeal followed; Public Defender Edward F. Browne, Jr. has submitted a brief on appellant's behalf.

Appellant contends that because he did not knowingly and voluntarily withdraw his post-verdict motions, he should be allowed to file post-verdict motions *nunc pro tunc*.[5] Our courts have repeatedly held that a defendant's failure to raise specific issues in post-verdict motions[6] constitutes a

5. Appellant has expressly raised this issue for our consideration. At all stages of the following discussion, we will assume that a defendant has argued before our Court that he did not knowingly and voluntarily waive his right to file post-verdict motions. However, by making this assumption, we do not intimate any opinion as to whether our Court may or should engage in a sua sponte review of the validity of a waiver of post-verdict motion rights.

6. Pa.R.Crim.P. 1123 delineates the operation and significance of post-verdict motions. This rule provides, in pertinent part:

"(a) Within seven (7) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued. If the grounds asserted do not require a transcript, neither the filing nor argument of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony.

"(b) If the defendant agrees on the record, the post-verdict motions may be made orally at the conclusion of the trial. The defendant

forfeiture of his right to have these issues considered on direct appeal. *See, e. g., Commonwealth v. Pugh,* 476 Pa. 445, 383 A.2d 183 (1978); *Commonwealth v. Perillo,* 474 Pa. 63, 376 A.2d 635 (1977); *Commonwealth v. Blair,* 460 Pa. 31, 33, n. 1, 331 A.2d 213, 214, n. 1 (1975). However, equally well-established is the proposition that in order for a waiver to be effective, ". . . the record must affirmatively demonstrate that the appellant was aware of his right to file posttrial motions and that he knowingly and intelligently decided not to do so." *Commonwealth v. Schroth,* 458 Pa. 233, 235, 328 A.2d 168, 169 (1974). *See also Commonwealth v. Tate,* 473 Pa. 478, 375 A.2d 341 (1977); *Commonwealth v. Brown,* 248 Pa.Super. 289, 375 A.2d 102 (1977). A review of Pennsylvania case law indicates that our appellate courts have adopted two different remedies when the record on direct appeal does not affirmatively demonstrate that an appellant has been fully informed of the rights and obligations attendant to post-verdict motions: (1) a remand for an evidentiary hearing to determine whether appellant voluntarily and knowingly waived his post-verdict motion rights, or (2) a remand to allow appellant to file post-verdict motions. We will review each line of cases in some detail in an attempt to reconcile this ostensible conflict in the case law.

may also within the seven (7)-day period on the record voluntarily and understandingly waive the filing of post-verdict motions. Prior to the acceptance of such waive the trial judge shall, pursuant to paragraph (c) of this Rule, advise the defendant on the record that his waiving of post-verdict motions shall preclude his raising on appeal any issues which might have been raised in such motions.

"(c) Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of his right to file post-verdict motions and of his right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that only the grounds contained in such motions may be raised on appeal." For recent clarification of the operation of Rule 1123, see *Commonwealth v. Kinsey,* 249 Pa.Super. 1, 375 A.2d 727 (1977) (Majority Opinion by PRICE, J., and Concurring Opinion by HOFFMAN, J.) and *Commonwealth v. Erhart,* 248 Pa.Super. 481, 375 A.2d 342 (1977) (Concurring Opinions by HOFFMAN, PRICE and SPAETH, JJ.)

*Commonwealth v. Schroth*, supra, provides the prototypical example of when an appellate court should order an evidentiary hearing to determine whether an appellant knowingly and voluntarily waived his right to file post-verdict motions. In *Schroth*, the defendant, convicted of first degree murder, did not file post-verdict motions; instead he directly appealed to the Supreme Court and raised several allegations of error for review. The Supreme Court reviewed the record and determined that the lower court had failed to advise Schroth that only issues raised in post-verdict motions could be raised on appeal. Without this warning, Schroth could have reasonably concluded that ". . . his failure to file post trial motions would not prejudice his rights on appeal, but would only operate to deny him the right to have the trial court consider the errors he alleged." Supra, 458 Pa. at 235, 328 A.2d at 169. Because of the record's ambiguity, the Court remanded for an evidentiary hearing to determine whether Schroth had made a knowing and voluntary decision not to file post-verdict motions.

In *Commonwealth v. Ash*, 461 Pa. 670, 337 A.2d 821 (1975) (hereinafter *Ash I*), our Supreme Court confronted a situation almost identical to that posed in *Schroth*. Despite a complete failure to file post-verdict motions with the trial court, appellant raised numerous issues on direct appeal. The record did not reveal whether appellant had been informed of his right to file post-verdict motions and of the consequential effects on his right to appeal of a failure to file such motions. The Supreme Court remanded for the type of evidentiary hearing contemplated in *Schroth*. What distinguishes *Ash* from *Schroth* is that after the lower court conducted the evidentiary hearing and concluded that Ash had knowingly and voluntarily waived his right to file post-verdict motions, Ash filed another appeal with our Supreme Court. *See Commonwealth v. Ash*, 466 Pa. 471, 353 A.2d 450 (1975) (hereinafter *Ash II*). The Supreme Court found that the record developed at the evidentiary hearing did not support the hearing court's finding of a knowing and voluntary waiver; neither the trial court nor

Ash's trial counsel informed Ash of the drastic repercussions that a failure to file post-verdict motions would have on his right to appeal. Consequently, the Court remanded the case to the lower court with instructions to permit Ash to file post-verdict motions *nunc pro tunc.*

*Commonwealth v. Tate,* 464 Pa. 25, 346 A.2d 1 (1975) (hereinafter *Tate I*), tracks the line of analysis employed in *Schroth* and *Ash I.* In *Tate I,* appellant, convicted of murder in the second degree, failed to file any post-verdict motions. On direct appeal, he raised specific issues for the Supreme Court's consideration. The Court perused the record and found no indication that appellant had voluntarily and knowingly waived his right to file post-verdict motions. Refusing to infer a waiver of precious appellate rights from a silent record, the Court remanded for a determination of whether appellant made a valid surrender of his post-verdict motion rights. The lower court held the required hearing and ruled that Tate had made such a waiver. Tate appealed and, in its most recent pronouncement on the standards governing a waiver of post-verdict motion rights, the Supreme Court reversed. *See Commonwealth v. Tate,* 473 Pa. 478, 375 A.2d 341 (1977) (hereinafter *Tate II*). The Court stated: "In order for a waiver to be effective in this context, the accused must be advised that a failure to raise an issue in post-verdict motions precludes raising that issue on appeal. Pa.R.Crim.P. 1123(c)(3)." Supra, 473 Pa. at 480, 375 A.2d at 342. The record disclosed that the trial court had abdicated its obligation to warn appellant pursuant to Rule 1123(c)(3). Moreover, the transcript of the evidentiary hearing on remand showed only that Tate's counsel had "discussed" post-verdict motions with his client; the transcript did not reflect the content of this discussion and hence gave no guarantee that counsel's advice had effectively remedied the trial court's disregard of its duty under Rule 1123(c). Because the Supreme Court could not determine, even after an evidentiary hearing, whether counsel specifically informed Tate of all pertinent ramifications of failing to file post-verdict motions, the Court remanded the case with

directions to permit Tate to file post-verdict motions *nunc pro tunc.*

The lessons of *Schroth, Ash I and II,* and *Tate I and II* may be succinctly stated: if a trial court fails to advise a defendant on the record of the consequences of failing to file post-verdict motions and if the defendant takes a direct appeal without filing any post-verdict motions, the appellate court should remand for an evidentiary hearing on whether the defendant knowingly and voluntarily waived his right to file post-verdict motions. *See Schroth ; Ash I ; Tate I.* At this hearing, defendant's trial counsel may testify that he fully warned his client that failure to file specific post-verdict motions would work a forfeiture of any issues raised on direct appeal, and that his client nevertheless freely decided to forego post-verdict motions. Such testimony, if believed, would effectively cure the trial court's failure to observe the mandates of Rule 1123(c) and would adequately support a finding that the defendant knowingly and voluntarily waived his right to preserve issues for appellate review.[7] See *Ash II ; Tate II.* However, if, despite an evidentiary hearing, the record still shows that neither counsel nor trial court specifically informed the defendant of the warnings required by Rule 1123(c), then the defendant must be afforded an opportunity to file post-verdict motions *nunc pro tunc.* See *Ash II ; Tate II. See also Commonwealth v. Williams,* 241 Pa.Super. 226, 360 A.2d 735 (1976); *Commonwealth v. Swain,* 237 Pa.Super. 322, 354 A.2d 256 (1975); *Commonwealth v. Wardell,* 232 Pa.Super. 468, 334 A.2d 746 (1975).

*Commonwealth v. Williams,* 459 Pa. 589, 330 A.2d 854 (1975), illustrates the line of cases which affords a different remedy to a defendant when the record on direct appeal fails to indicate affirmatively that he knowingly and volun-

---

7. A defendant could conceivably argue that despite being advised of his post-verdict motion rights by either the trial court or his counsel, his decision not to pursue post-verdict motions was involuntary because of pressures not reflected in the record. We intimate no opinion as to the proper procedures for raising such a contention or as to the standards governing consideration of such a claim.

tarily waived his right to file post-verdict motions pursuant to Rule 1123. *Williams* and related cases sanction, in certain circumstances, a remand for the automatic filing of post-verdict motions *nunc pro tunc* rather than for an evidentiary hearing. In *Williams*, the defendant pleaded guilty to aggravated robbery and a general charge of murder; at a degree of guilt hearing, he was found guilty of murder in the first degree. Post-verdict motions were made orally but later withdrawn at the defendant's request. On appeal, Williams raised several issues not considered by the lower court. The Supreme Court reviewed the record and discovered that the trial court had instructed Williams that he could file an appeal even if he withdrew his post-verdict motions. This affirmative misrepresentation precluded a finding that Williams had a full appreciation of the consequences of withdrawing his post-verdict motions. Accordingly, the Supreme Court remanded the case to the trial court for the filing of post-verdict motions.

*Commonwealth v. Doman*, 237 Pa.Super. 415, 352 A.2d 157 (1975), is analogous in reason and result to *Williams*. In *Doman*, the defendant, through his counsel, filed post-verdict motions. However, at the sentencing hearing, Doman's counsel suggested that his client would withdraw his post-verdict motions if the court would give Doman a sentence concurrent to the one he was then serving on an unrelated conviction. The court accepted this bargain without conducting any examination of Doman's understanding of the consequences of withdrawing his post-verdict motions or even securing Doman's personal consent to the arrangement. On appeal, Doman raised a challenge to the sufficiency of the evidence to sustain his larceny conviction. Because Doman had withdrawn his post-verdict motion raising this issue, we refused to treat it on the merits. However, because the record did not demonstrate that the lower court informed Doman at the sentencing hearing of the consequences of withdrawing his post-verdict motions, we re-

manded to allow Doman another opportunity to file post-verdict motions.[8]

*Commonwealth v. Brown*, 248 Pa.Super. 289, 375 A.2d 102 (1977), presents a very recent example of when a court on direct appeal should remand for the automatic filing of post-verdict motions *nunc pro tunc* instead of an evidentiary hearing. In *Brown*, the defendant's counsel failed to file any specific post-verdict motions; he merely filed the boiler-plate contentions condemned by our Supreme Court in *Commonwealth v. Blair*, supra. However, our review of the record revealed the lower court's failure to inform Brown of the necessity of filing specific motions in order to preserve his claims for appellate review. Rule 1123(c)(3). Because the record evidenced that appellant had not been apprised of the requirements of Rule 1123(c), we remanded the case for the filing of post-verdict motions *nunc pro tunc.*[9]

**8.** *Williams* and *Doman* both involved an appellant's withdrawal of already filed post-verdict motions. These cases make clear that, as with a failure to file any post-verdict motions, " . . . the withdrawal of post-verdict motions must have been made with a full knowledge and understanding of its consequential effect on the appellant's right to appeal." *Williams,* supra, 459 Pa. at 591, 330 A.2d at 855.

**9.** *Commonwealth v. Cathey*, 477 Pa. 446, 384 A.2d 589 (1977), confirms our analysis in *Brown. See also Commonwealth v. Cathey*, 248 Pa.Super. 363, 375 A.2d 139 (1977) (Dissenting Opinion by HOFFMAN, J.). In *Cathey*, the trial court failed to advise the defendant of the significance and operation of Rule 1123(c)(3). Defendant's counsel subsequently filed boilerplate post-verdict motions which raised only the sufficiency of the evidence. On appeal, defendant attempted to argue that introduction of certain evidence violated his constitutional right to be protected against unreasonable searches and seizures. Our Court determined that the lower court substantially complied with Rule 1123(c) and, therefore, that Cathey personally made a knowing and intelligent waiver of his post-verdict motion rights. In a per curiam opinion, the Supreme Court disagreed and remanded for the filing of supplemental post-verdict motions *nunc pro tunc*. Because the lower court failed to warn Cathey on the record that only those grounds raised in post-verdict motions could be pursued on appeal, the record did not affirmatively demonstrate that Cathey appreciated the consequences of failing to file specific post-verdict motions. The Supreme Court expressly endorsed our decision in *Commonwealth v. Brown.*

While *Cathey* secures Brown's position in our constellation of cases, it may implicitly bring into question the viability of our

At first blush, the remedy invoked in *Schroth, Ash I* and *Tate I* appears inconsistent with that endorsed in *Williams, Doman,* and *Brown.* Upon closer inspection, however, these cases can be easily harmonized. In the former trilogy of cases, an evidentiary hearing was appropriate, despite the trial court's failure to warn the defendant on the record of the consequences of failing to file post-verdict motions, because the advice of counsel may have served as an effective substitute for the trial court's omission. If counsel thoroughly warned the defendant of all pertinent consequences, a finding of a voluntary and knowing waiver of post-verdict motion rights could be sustained. By contrast, in *Williams, Doman,* and *Brown,* it is readily apparent that

analytical scheme as a whole. The Supreme Court in its per curiam opinion did not cite or discuss any cases approving the remedy of an evidentiary hearing when a trial court fails to comply with Rule 1123(c). *See, e. g., Schroth; Ash I and II; Tate I and II.* Instead, the Court relied upon two cases, *Commonwealth v. Miller,* supra, and *Commonwealth v. Brown,* supra, consistent with our framework, and two cases, *Commonwealth v. Simmons,* 236 Pa.Super. 466, 344 A.2d 593 (1975) and *Commonwealth v. Dimitris,* 231 Pa.Super. 469, 331 A.2d 701 (1974), incompatible with our framework. See footnote 13, infra, for a more extended discussion of *Simmons* and *Dimitris.* Consequently, *Cathey* appears to be another example of the very problem besetting our appellate courts in this area of the law: citation and discussion of one line of precedent without unearthing, examining and reconciling the diametrically opposed line of cases. (In this regard, we note that Chief Justice EAGEN and Justice POMEROY dissented from the summary disposition in *Cathey* because they believed that procedural issue demanded fuller consideration.) We do not believe that the Supreme Court meant to overrule *sub silentio* an existing and recently confirmed line of precedent approving a remand for an evidentiary hearing in certain circumstances. *See Tate I and II.*

Our opinion today attempts to delineate a principle for harmonizing two lines of appellate cases which have sanctioned divergent remedies when the record does not affirmatively demonstrate that an appellant waived his post-verdict motion rights. We urge the Supreme Court to undertake a similar comprehensive review of appellate case law in this area and to announce definitive principles for deciding cases such as the instant one. When the Supreme Court does undertake this review, we strongly suggest that the Court consider a bright line test capable of easy and time-saving judicial administration which would allow the filing of post-verdict motions *nunc pro tunc* in *all* cases in which the trial court failed to observe Rule 1123(c).

any advice given by counsel outside the record could not effectively replace the trial court's neglect to give the mandatory Rule 1123(c) admonitions. In *Williams*, the trial court instructed the defendant that he could appeal even if he withdrew his post-verdict motions. Regardless of any advice his counsel may have proffered, this affirmatively misleading representation on the part of the trial court, as opposed to mere neglect to warn a defendant pursuant to Rule 1123(c), precluded a finding of a knowing and voluntary waiver.[10] In *Doman*, a lower court allowed a defendant to withdraw his post-verdict motions in its presence without ascertaining in any way whether the defendant fully understood the consequences of his actions. Even if counsel had elucidated the operation and significance of post-verdict motions to his client before the sentencing hearing, the court's failure to examine Doman on the consequences of his action *at the very moment of his decision* vitiated any finding of a knowing and voluntary waiver.[11] Finally, in

10. Compare *Commonwealth v. Miller*, 469 Pa. 370, 366 A.2d 220 (1976). As in *Williams*, the lower court in *Miller* affirmatively led the appellant to believe that a direct appeal could be taken to a higher court without the need for filing post-verdict motions.

11. Compare Rule 1123(b) (not in effect at the time of Doman's conviction). Prior to accepting a waiver of the right to file post-verdict motions within the seven day period after a finding of guilt, the trial court, pursuant to Rule 1123(b), must advise the defendant on the record that his waiving of post-verdict motions shall preclude his raising on appeal any issues which might have been raised in such motions. This warning insures that at the moment of a decision to waive post-verdict motions, the defendant fully understands the consequences of his waiver. Compare also *Commonwealth v. Brooks*, 250 Pa.Super. 333, 378 A.2d 963 (1977). In *Brooks*, appellant's counsel made oral post-verdict motions on the record at the conclusion of trial pursuant to Rule 1123(b). Neither the lower court nor counsel advised appellant on the record of the consequences this action would have on his right to raise other issues on appeal. Appellant did in fact attempt to raise different issues on appeal. Our Court remanded for the filing of post-verdict motions *nunc pro tunc*. Like *Doman*, *Brooks* illustrates a situation in which a court fails to insure the knowing and voluntary quality of a waiver made in its very presence. *Doman* and *Brooks* stand in contrast to a situation, such as in *Tate*, in which a waiver occurs outside the courtroom and without an opportunity for a court's instruction immediately before the decision to waive is made.

180

*Brown*, the trial court failed to advise the defendant that only those contentions specifically raised in post-verdict motions would be entertained on appeal; defendant's counsel then filed boilerplate written post-verdict motions and attempted to press more specific issues orally before the lower court and on appeal. Thus, counsel, acting on behalf of defendant, ran afoul of the very rule of specificity which the trial court had neglected to read. Under these circumstances, it was patently clear that the advice of counsel did not effectively substitute for the trial court's neglect to read Rule 1123(c) warnings: counsel's own actions demonstrated that he did not understand the operation of Rule 1123. A remand for an evidentiary hearing would have been a futile gesture. *See also Commonwealth v. Walsh*, 248 Pa.Super. 479, 375 A.2d 198 (1977).[12]

■ Based upon our reading of *Schroth, Ash I and II*, and *Tate I and II* on the one hand, and *Williams, Doman*, and *Brown* on the other, we now articulate the following guidelines for determining when an appellate court, confronted with a record that does not affirmatively demonstrate a knowing and voluntary waiver of post-verdict motions rights, should remand for an evidentiary hearing and when it should remand for the filing of post-verdict motions *nunc pro tunc*. If the record demonstrates that the trial court failed to warn the defendant of the consequences of failing to file post-verdict motions, but does not rule out the possibility that trial counsel's advice served as an effective replacement, then the appellate court should remand for an evidentiary hearing to determine whether the defendant knowingly and voluntarily decided not to pursue his post-verdict motions. If the record demonstrates that the trial

12. Compare *Commonwealth v. Miller*, 232 Pa.Super. 171, 335 A.2d 528 (1975). In *Miller*, the defendant refused the assistance of the Public Defender at trial. After the return of a guilty verdict, the trial court failed to inform Miller of the warnings required by Rule 1123(c). Miller attempted to appeal without filing any post-verdict motions, and our Court remanded to allow Miller the opportunity to file post-verdict motions *nunc pro tunc*. In *Miller*, as in *Brown*, we knew that counsel could not have given advice which effectively cured the trial court's failure to comply with Rule 1123(c): indeed Miller had no counsel to advise him.

court failed to give complete Rule 1123(c) admonitions and that counsel's advice did not or could not efficaciously substitute for this omission, then the appellate court should remand to allow the defendant to file post-verdict motions.[13]

 Applying these principles to the instant case, we believe that a remand for an evidentiary hearing pursuant to *Schroth, Ash I* and *Tate I* is in order. The trial court failed to comply with Rule 1123(c); in particular, the court failed to advise appellant that he had the right to "the assistance of counsel in the filing of [post-verdict] motions and on appeal of any issues raised therein," Rule 1123(c)(1), and that "only the grounds contained in [post-verdict] motions may be raised on appeal." Rule 1123(c)(3). However, the record does not preclude the possibility that one of appellant's three attorneys may have advised appellant of the significance of post-verdict motions and of the consequences which attach to a failure to file these motions. Indeed, it is evident that appellant discussed post-verdict motions with his various attorneys. For example, Appellant's trial counsel, Howard Mummau, filed an affidavit accompanying his client's original post-verdict motions; this affidavit stated that he filed the post-verdict motions at appellant's behest. In his January 24, 1977 petition request-

13. Candor compels us to admit that our reconciliation of Pennsylvania cases does not encompass and explain all cases. For example, in *Commonwealth v. Dimitris*, 231 Pa.Super. 469, 331 A.2d 701 (1974), and *Commonwealth v. Steffish*, 243 Pa.Super. 309, 365 A.2d 865 (1976), our Court remanded for the filing of post-verdict motions *nunc pro tunc* because the trial court had not warned the defendant of the consequences of failing to file post-verdict motions. The record in both cases was silent as to whether counsel may have given advice to cure this omission. *Commonwealth v. Simmons*, 236 Pa.Super. 466, 344 A.2d 593 (1976) also appears to be an anomaly. In *Simmons*, the court did not explicitly inform the defendant that he could only press those issues on appeal which he presented in post-verdict motions. The court did, however, comply with all other aspects of Rule 1123(c). Our Court, on the authority of *Dimitris*, remanded for the filing of post-verdict motions *nunc pro tunc*. While the results reached in *Dimitris, Steffish*, and *Simmons* are of dubious precedential value in light of today's opinion, these cases still retain importance for their insistence on the significance of post-verdict motions and the necessity for proper advice as a prerequisite to finding a knowing and voluntary waiver of appellate rights.

ing the appointment of new counsel, appellant charged that his trial attorney had refused to file requested post-verdict motions. Finally, appellant's April 13, 1977 petition for leave to withdraw his post-verdict motions stipulated that his counsel, Penn B. Glazier, fully advised him of his rights; appellant signed this petition. Thus, the record betokens appellant's active participation in the post-verdict motion process. Nevertheless, the present state of the record does not permit a finding that appellant knowingly and voluntarily withdrew his post-verdict motions. While we know that counsel and appellant had discussions concerning post-verdict motions, the record does not disclose the content or extent of these discussions, and we cannot determine whether appellant received specific advice regarding the sweeping impact a withdrawal of his motions would have upon his right to appeal. Under these circumstances, we must remand for an evidentiary hearing pursuant to *Schroth, Ash I,* and *Tate I.* Therefore, we vacate the judgments of sentence and remand for a determination of whether appellant received proper warnings concerning the consequential effect of his action on his right to appeal and whether appellant acted voluntarily, knowingly, and intelligently in withdrawing his post-verdict motions. If the hearing court finds that appellant did not make a knowing, intelligent, and voluntary waiver, it should permit appellant an opportunity to file post-verdict motions *nunc pro tunc.* If the hearing court finds a valid waiver, it should reinstate the judgments of sentence. Following the hearing court's disposition, either side shall be entitled to file a new appeal.

Judgments of sentence vacated and case remanded for proceedings consistent with this opinion.

JACOBS, President Judge, and PRICE, J., concur in the result.

SPAETH, J., dissents and would remand for filing of post-verdict motions *nunc pro tunc.* *Commonwealth v. Cathey,* 477 Pa. 446, 384 A.2d 589 (1978).

WATKINS, former President Judge, did not participate in the consideration or decision of this case.